UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re PLUSFUNDS GROUP, INC., :
:
            Debtor. :
:
------------------------------------------------------------x
HARBOUR TRUST CO. LTD., In Its :
Capacity as SPhinX Trustee, :
:
       Appellant & Cross-Appellee, :    13-CV-4809 (PAC)
:
  - against - :    OPINION & ORDER
:
ROBERT AARON, *et al.*, :
:
       Appellees & Cross-Appellants. :
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-10-14

HONORABLE PAUL A. CROTTY, United States District Judge:

    This action arises out of a bankruptcy case that has been closed since December 2010. Prior to the case's closing, the bankruptcy court confirmed a plan of liquidation that provided for creation of the SPhinX Trust (the "Trust") and designated Harbour Trust Co. Ltd. (the "Trustee") as its trustee. On February 11, 2013, the Trustee moved to reopen the case so that it could seek an extension of the Trust. Robert Aaron, Derivatives Portfolio Management, Ltd., Derivatives Portfolio Management, LLC, DPM Mellon Ltd., and DPM Mellon, LLC (collectively, the "DPM Defendants"), who are defendants in related civil actions initiated by the Trustee, filed objections to the Trustee's motion. On May 13, 2013, U.S. Bankruptcy Judge James M. Peck held that the DPM Defendants did not have standing to object but nonetheless he denied the Trustee's motion to reopen. The Trustee appealed to this Court and the DPM Defendants cross-appealed. The Court AFFIRMS the bankruptcy court's decision in its entirety.

**BACKGROUND**

**I.    The Chapter 11 Filing**

    On March 2, 2006, PlusFunds Group, Inc. (the "Debtor") filed for relief under chapter 11

of the Bankruptcy Code. (*See* Bankr. Dkt. No. 1.) Prior to filing its petition, the Debtor was a privately held financial services provider that offered a range of investment vehicles, including the SPhinX Funds platform. (*See* Bankr. Dkt. No. 452, Art. II.) After Refco Inc. ("Refco") and its affiliated debtors filed for bankruptcy on October 17, 2005, the Refco creditors' committee sought recovery of approximately $312 million from one of the SPhinX Funds. (*Id.*) This resulted in a wave of redemptions by investors in other SPhinX Funds and, ultimately, the Debtor's own liquidation. (*Id.*)

The Debtor filed its schedules of assets, liabilities, creditors, and executory contracts (the "Schedules") on March 22, 2006. (*See* Bankr. Dkt. No. 67.) In the Schedules, the Debtor listed Derivatives Portfolio Management, LLC, DPM Mellon Ltd., and DPM Mellon, LLC as creditors and/or counterparties to executory contracts. (*Id.* at 16, 28-29.) On August 7, 2007, the court confirmed the Debtor's chapter 11 plan of liquidation (the "Plan"), (*see* Bankr. Dkt. No. 515), which provided for the creation of the Trust pursuant to the SPhinX Trust Agreement (the "Trust Agreement"). (*See* Bankr. Dkt. No. 774, Ex. A.) The primary purpose of the Trust was to pursue and liquidate certain causes of action against creditors and counterparties (the "Causes of Action") so that any value realized could be given to the Trust's beneficiaries. (*See id.*, Ex. A §§ 2.2, 3.1.) The Trust Agreement could only be amended upon the written consent of the Advisory Board, (*see id.*, Ex. A § 11.8), whose powers and authority automatically ceased upon termination of the Trust, (*see id.*, Ex. A § 9.6).

The Trust Agreement provided for termination of the Trust in two ways. If the Trust paid all of its costs, expenses, and obligations and distributed all assets in accordance with the Plan, the Trustee could move to terminate the Trust. (*See id.*, Ex. A § 10.2.) Otherwise, the Trust would terminate on September 20, 2012 and the Trustee would distribute all assets in accordance with the Plan immediately thereafter. (*See id.*, Ex. A § 10.3.) The Trust could be extended,

however, if the Trustee obtained the bankruptcy court's approval during the six months prior to termination. (*See id.*, Ex. A § 10.3.)

On December 3, 2010, the Debtor moved to close its chapter 11 case. (*See* Bankr. Dkt. No. 764.) In a supporting declaration, the Debtor stated that "the Debtor's estate has been fully administered and . . . there will be no matters pending before the Court. (Bankr. Dkt. No. 765, Ex. A ¶ 8.) The Debtor further confirmed that the Trustee "does not anticipate any need for the Debtor's Chapter 11 Case to remain open." (*Id.*, Ex. A ¶ 8.) On December 22, 2010, the court entered an order granting the motion for final decree and closing the bankruptcy case. (*See* Bankr. Dkt. No. 769.)

## II.     The Causes of Action Against the DPM Defendants

On March 5, 2008, the Trustee commenced an action against the DPM Defendants in the Superior Court of New Jersey. On April 17, 2008, the DPM Defendants removed the action to the U.S. District Court for the District of New Jersey. The action was then consolidated as part of the Refco Inc. multi-district litigation and transferred to the Southern District of New York, where it is currently pending before U.S. District Judge Jed S. Rakoff (the "Refco MDL Action"). *See In re Refco Inc. Secs. Litig.*, 07 MDL 1902 (S.D.N.Y.). On December 31, 2012, the DPM Defendants moved for summary judgment, in part, because the Trustee lacks standing to prosecute the Causes of Action after it did not seek an extension of the Trust prior to the Trust's expiration on September 20, 2012.[1]

## III.    The Amendment to the Trust Agreement

While the DPM Defendants' motion for summary judgment was pending in the Refco

---

[1] On August 7, 2013, Special Master Daniel J. Capra issued a Report and Recommendation, where he found that the DPM Defendants made a "creditable argument" that the Trustee lacked standing but, in light of this appeal, he did not decide the issue. (*See* Brief of Appellant/Cross-Appellee, Ex. A at 22-23.) Special Master Capra recommended that the DPM's motion for summary judgment be granted on other grounds. On December 2, 2013, Judge Rakoff declined to adopt Special Master Capra's Report and Recommendation and denied DPM's motion for summary judgment. *See In re Refco Inc. Sec. Litig.*, Nos. 07 MDL 1902, 08 Civ. 7416, 2013 WL 6334303 (S.D.N.Y. Dec. 2, 2013).

MDL Action, the Trustee obtained written consent of the Advisory Board to amend the Trust Agreement. On February 7, 2013, the Trustee entered into the Second Amendment to the SPhinX Trust Agreement (the "Second Amendment"), which would allow the Trustee to seek approval of an initial one-year extension of the Trust within 150 days of the Trust's termination date. (*See* Bankr. Dkt. No. 774, Ex. C at 2-3.) "[I]f so approved by the Bankruptcy Court, such initial extension [would] be effective *nunc pro tunc* to the [termination date]." (*See id.*, Ex. C at 3.)

On February 11, 2013, the Trustee moved for approval of the Second Amendment and an extension of the Trust. (*See* Bankr. Dkt. No. 773.) On February 22, 2013, the Trustee filed a motion to reopen the case so that the bankruptcy court could consider the motion for approval of the Second Amendment. (*See* Bankr. Dkt. No. 777.) The DPM Defendants then filed an objection to both motions, arguing that (1) a retroactive extension of the Trust was impermissible under the terms of the Trust Agreement and (2) the Trustee failed to show cause to reopen the case. (*See* Bankr. Dkt. No. 781.)

### IV. The Bankruptcy Court's Decision

On May 13, 2013, Judge Peck denied the Trustee's motion to reopen the chapter 11 case. *See In re PlusFunds Grp., Inc.*, 492 B.R. 202 (Bankr. S.D.N.Y. 2013). As an initial matter, Judge Peck determined that the DPM Defendants lack standing to object to a reopening of the case because they do not constitute "parties in interest" under Section 1109(b) of the Bankruptcy Code. *Id.* at 206-08. The DPM Defendants had argued that they have standing because an argument for dismissal in the Refco MDL action was based on the Trustee's lack of authority to pursue the Causes of Action as a result of the Trust's termination. In rejecting this argument, Judge Peck concluded that "being affected by the outcome of a proceeding is not the same as having a direct financial stake within the bankruptcy case and does not properly qualify for

standing as a party in interest." *Id.* at 208.

Judge Peck also held that the Trustee did not establish one of the necessary grounds to reopen a case under Section 350(b) of the Bankruptcy Code. First, Judge Peck rejected the need to reopen Debtor's case to administer assets, i.e., the Causes of Action. *Id.* at 209. Because "assets" under Section 350(b) must not be known when the case was closed, the Causes of Action do not constitute assets. *Id.* Even if the Causes of Action are assets under Section 350(b), Judge Peck concluded that the benefit in reopening the case is unclear since the Trustee claims that it can pursue the Causes of Action regardless of his decision. *Id.* Second, Judge Peck held that there is insufficient cause to reopen the Debtor's case under the factors set forth in *In re Easley-Brooks*, 487 B.R. 400 (Bankr. S.D.N.Y. 2013), because "there is a non-bankruptcy forum capable of addressing issues related to the Trust, there has been no showing of prejudice resulting from denial of the Trustee's request to reopen the case, and there is no clearly articulated benefit to the Trustee in reopening the case." *In re PlusFunds Grp., Inc.*, 492 B.R. at 210. In a footnote, Judge Peck stated that the three remaining factors are not directly relevant to the analysis. *Id.* n.7. Accordingly, Judge Peck concluded that the Trustee failed to meet its burden to show cause and therefore denied the motion.

## DISCUSSION

### I. Legal Standard

A district court has jurisdiction to hear appeals from final judgments, orders, or decrees by the bankruptcy court under 28 U.S.C. § 158(a)(1). "A bankruptcy court's decision whether to reopen debtor's case is committed to the sound discretion of the bankruptcy court." *In re I. Appel Corp.*, 300 B.R. 564, 567 (S.D.N.Y. 2003) (internal quotations omitted). Thus, a district court reviews a denial of a motion to reopen under an abuse of discretion standard. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996). "The existence

of standing[, however,] is a question of law that we review *de novo*." *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004).

II.   **Analysis**

    A.   **The Bankruptcy Court Properly Held that the DPM Defendants Lack Standing**

Section 1109(b) of the Bankruptcy Code provides that a "party in interest" may appear and be heard on any issue in a chapter 11 proceeding. 11 U.S.C. § 1109(b). Examples of a party in interest are a debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee. *Id.*[2] These examples are not meant to exclude other types of interested parties and a court must instead determine a party's standing on a case by case basis. *Teligent, Inc. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011). In doing so, courts look "to the underlying purpose of the Code which is 'to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute.'" *In re Saint Vincents Catholic Med. Ctrs. of N.Y.*, 429 B.R. 139, 149 (Bankr. S.D.N.Y. 2010) (quoting *Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983)). "Courts in this District, while generally interpreting Section 1109(b) broadly, have limited 'party in interest' standing where a party's interest in the proceedings is not a direct one." *In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011).

The DPM Defendants claim that Judge Peck applied the wrong legal standard when he stated that the DPM Defendants did not have a "direct financial stake within the bankruptcy court." (*See* Brief of Appellees/Cross-Appellants at 21 (quoting *In re PlusFunds Grp., Inc.*, 492 B.R. at 208)). According to the DPM Defendants, a person with a significant legal interest, as

---

[2] As an initial matter, the DPM Defendants assert that they are "creditors" and therefore are parties in interest under Section 1109(b). This argument is meritless. While some of the DPM Defendants were creditors to the Debtor, their basis for intervening is not related to that relationship.

opposed to purely a financial interest, may also qualify as a party in interest. *Id.* at 21-22. But the DPM Defendants misconstrue the bankruptcy court's decision. Judge Peck did not require that the DPM Defendants possess a financial interest in the bankruptcy case. Instead, he held that the asserted legal interest—the DPM Defendants' ability to assert a standing defense in the Refco MDL Action—was not significant enough to confer standing on the DPM Defendants here. In fact, Judge Peck relied on *Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177 (10th Cir. 2007), where the Tenth Circuit held that an objector's claim that its defense in a personal injury case would be affected was not sufficient to give it a direct interest in the bankruptcy case. *Id.* at 183.

Furthermore, in applying the correct standard, Judge Peck also reached the right result. Simply having a defense related to the outcome of a motion does not mean that an objector has a direct or sufficient stake in that case. *See, e.g., id.* ("Appellee's claim that its defense in the personal injury case may be affected by the reopening is insufficient to give it a direct interest in the Debtors' bankruptcy case."); *Alpex Computer Corp. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 357-58 (10th Cir. 1995) ("[Objector's] status as a defendant in a civil suit does not create standing here."); *Irvin v. Lincoln Heritage Life Ins. Co. (In the Matter of Irvin)*, 950 F.2d 1318, 1321 (7th Cir. 1991) ("[Objector] cannot assert with confidence that its status as defendant in the state court suit necessarily grants standing."). Nor does the possibility of increased litigation costs and expenses in a different action constitute a direct interest in *this* case. In fact, Judge Rakoff's recent denial of the motion for summary judgment makes any interest the DPM Defendants may have had in the bankruptcy case even more speculative.

The Court holds that the DPM Defendants do not possess a direct or sufficient interest in the bankruptcy proceedings. Accordingly, the Court affirms Judge Peck's holding that the DPM Defendants lack standing to object to the Trustee's motion.

### B. The Bankruptcy Court Acted Within Its Discretion In Not Reopening the Case

Bankruptcy Code Section 350(b) provides that a bankruptcy case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Code does not define "other cause," and the decision to reopen is within the bankruptcy court's discretion. *See Chalasani*, 92 F.3d at 1307. The moving party bears the burden of proof to show cause to reopen a case. *In re Easley-Brooks*, 487 B.R. at 406. Here, the Trustee argues that Judge Peck abused his discretion by not reopening the case because reopening was necessary to administer assets and for other cause. Neither claim is persuasive.

First, the bankruptcy court acted within its discretion in holding that the case should not be reopened to administer assets. A bankruptcy case can be closed under Section 350(a) only after the bankruptcy estate's assets have been "fully administered." 11 U.S.C. § 350(a). As a result, a bankruptcy matter should only be reopened to administer assets that are newly discovered, not those that were known to the debtor when the case was closed. *See In re Boland*, 275 B.R. 675, 678 (Bankr. D. Conn. 2002); *see also* 3 Collier on Bankruptcy ¶ 350.02[1] (Alan N. Resnick & Henry J. Somme eds., 16th ed.) ("[R]eopening under section 350(b) is intended to permit the administration of *newly discovered* assets that were not scheduled during the case and were otherwise not known to the trustee."). Here, the Trustee seeks a reopening of the bankruptcy case so that it can continue to pursue the Causes of Action. Yet these "assets" were known at the time of the closing. In fact, the Causes of Action were the primary reason why the Trust was created. (*See* Bankr. Dkt. No. 774, Ex. A §§ 2.2, 3.1.) Since the Causes of Action do not constitute assets under Section 350(a), the bankruptcy court did not abuse its discretion.

Second, Judge Peck acted within his discretion in holding that "other cause" did not exist. When determining whether cause exists, courts "may consider numerous factors including

8

equitable concerns, and ought to emphasize substance over technical considerations." *Batsone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864 (2d Cir. 1997). Factors to consider include:

> (1) the length of time that the case was closed, (2) whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case, (3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum, (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen, (5) the extent of the benefit to the debtor by reopening, and (6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*In re Easley-Brooks*, 487 B.R. at 407. The bankruptcy court applied this standard by analyzing factors two, four, and five and determining that each weighed in favor of not reopening the case. *In re PlusFunds Grp., Inc.*, 492 B.R. at 209-11. For the remaining factors, Judge Peck concluded that they were not directly relevant to the analysis. *Id.* at 210 n.7.

The Trustee mainly quibbles with the weight the bankruptcy court afforded to certain facts instead of others. For example, on the question of prejudice, Judge Peck held that there is no clear prejudice to the Trustee if the case is not reopened because it maintains it can still prosecute the Causes of Action regardless of the bankruptcy court's decision. *Id.* at 211. The Trustee, however, claims that Judge Peck abused his discretion by not considering the "legally cognizable prejudice in the form of uncertainly, delay, and additional cost" to the Trustee if the case was not reopened. (*See* Brief of Appellant/Cross-Appellee at 17.) But a court only abuses its discretion when its factual findings were "clearly erroneous" or "cannot be located within the range of permissible decisions." *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). That is not the case here. As a result, the Court rejects these arguments outright.

The Trustee also claims that the bankruptcy court abused its discretion by imposing a requirement of excusable neglect. (*See* Brief of Appellant/Cross-Appellee at 21-23.) Yet Judge Peck did no such thing. He merely stated in a footnote that the Trustee could not make a "compelling appeal for extraordinary relief . . . without making a better showing of both the

excusable neglect that may have caused the problem in the first place and compliance with the requirements of Section 350(b) of the Bankruptcy Code." *In re PlusFunds Grp., Inc.*, 492 B.R. at 210 n.8. He did not premise his holding on this issue—in fact, he did not even apply the excusable neglect standard. Regardless, the bankruptcy court did not abuse its discretion by considering the Trustee's failure to explain why it did not take action within the six-month period. In determining whether cause exists to reopen a case, bankruptcy courts have broad discretion to consider all relevant facts and circumstances, including any equitable concerns. *In re Emmerling*, 223 B.R. at 864. Whether the Trustee could articulate any reasonable explanation for its delay is certainly a relevant concern and therefore the bankruptcy court did not abuse its discretion in considering this factor.

Accordingly, the Court holds that the bankruptcy court acted well within its discretion in finding that the case did not need to be reopened to administer assets or for other cause.

## **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the bankruptcy court's finding that the DPM Defendants lack standing to object and that the case should not be reopened. The Clerk of Court is directed to enter judgment and to terminate this case.

Dated: New York, New York
       February 10, 2014

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge